Good morning, everyone, and welcome to the Ninth Circuit. I think I want to say a special welcome to the students of L.A. City College. I think I see a lot of young folks here. Great to see you. We will be speaking to you afterwards. Our law clerks will speak to you first while the three of us are conferencing, and then we'll come out and speak to you for a little bit and answer some questions, okay? All right, so we've got three matters on calendar today, something my colleagues have heard me say every day this week. In the Ninth Circuit, there are no bonus points or extra credit for using all of your time. So if you've made your points, you're not getting any questions from us, and you have time on the clock, it's okay to sit down. You don't have to use all of it. So with that, I'll call the first matter for argument today, Johnson v. Shinn. Counsel? And Counsel, you are representing, in this case, pro bono, correct? That's correct. I want to thank you. And just so the students understand, he's a lawyer. Normally, he charges a lot to be a lawyer. In this case, he's charging his client nothing. So it's a big service that he's stepping up to do that. You may proceed. Thank you, Your Honor. I may please the court. My name is Jeffrey Block, and I'm pro bono counsel for the plaintiff appellant Richard Johnson. With your permission, I'd like to reserve three minutes for rebuttal. Very well. In 2018, this court in Johnson v. Bendell held that there was a material dispute of fact as to whether the Arizona Department of Corrections validated Richard Johnson in retaliation for his filing of prison grievances. In the aftermath of this court's decision, the Arizona Department of Corrections has doubled down, twice validating Johnson based on the same evidence used in his first retaliatory proceeding. The defendants in this case violated Richard Johnson's due process rights by validating him, and the district court erred in overlooking those issues. I'd first like to address the evidence that was used in Mr. Johnson's hearing. None of the evidence on its face shows that Richard Johnson is an active member of a prison gang, and any innuendo the defendants may ask this court to reach is not supported by the record. Your client is in for conspiracy to commit murder in a gang-related killing, right? That's correct, Your Honor. Is your client still, by the way, scheduled to get out next year? That is our understanding, Your Honor. I'll say in the last couple of weeks, we've been trying to reach, we haven't been able to contact him in the last week or so, so I don't have up-to-date information on that, but that is our current understanding, Your Honor. Does the prison get to consider the fact that your client is in for what the Arizona Court of Appeals described in his co-defendant's case as a gang-related killing? We don't believe, so Your Honor, I'm not aware of a case that holds that. The question here is whether or not there's reliable evidence that Mr. Johnson is a member of a security threat group, which is a prison-specific gang, and I'm not aware of any case that holds that Mr. Johnson's reliable indicator of his participation in a prison gang. I mean, but it occurred while he was in prison, right? I have the case started out rival gang members. McCown and A.T. were prison inmates in June 2010. McCown and another inmate, Johnson, jumped over a railing, ran toward the victim. Johnson restrained him while he got killed. Again, Your Honor, I don't believe that is evidence of Mr. Johnson's participation in the Warrior group, which is a security threat group at the prison. If I can just focus on the three pieces of evidence the defendants rely on, the first is a so-called roll call list. This was a list of Native American inmates. It did not include Mr. Johnson's name. It was not written by Mr. Johnson. Johnson disputes possessing it, and we don't believe that the defendants have introduced anything into the record. This is an incredibly thin record here. Johnson was proceeding pro se below, but based on this incredibly thin record, there's nothing in it that shows what about it shows that Johnson is an active participant in a prison gang. And the defendants haven't cited any case in which a court held that there are reports on reliable, a list of inmate names, Native American inmates, that doesn't include the plaintiff's name and isn't written by him. As for the second piece of evidence the defendants rely on, that's a letter that Johnson received. Again, there's nothing in the record that shows why that's a reliable indicator of his prison gang involvement. And at this stage, the question is really, viewing the evidence in the light most favorable of Mr. Johnson, could a reasonable jury find that this evidence is unreliable? And we think that the answer is plainly yes. Mr. Johnson received this letter from, at the time, an unvalidated inmate. It has nothing to do with gang violence. It simply is one inmate introducing himself to Mr. Johnson. That's it. We're not aware of a case that holds that such a piece of evidence is a reliable indicator of Mr. Johnson's participation in a prison gang. So what, tell me again your argument, I know it's in your brief, as to why the micro-note doesn't count. Again, Your Honor, we'd say that on its face the micro-note is not discussing prison gang participation and then the defendants haven't introduced anything into the record that explains why that micro-note is a reliable indicator of gang activity. What about ER 213 to 215? The memo from Brass to, if I'm pronouncing it right, Quintero or Quintero? I believe it's that part of his 2014 validation packet, Your Honor. I'm sorry, I don't have the full record in front of me right now. But what I would say is, we think it's notable that both the district court and the defendants, neither of them cited anything in the record to explain why that is reliable evidence of Mr. Johnson's involvement in a prison gang. Indeed, if you look at the defendant's red brief, pages 21 through 24, where they discuss the evidence introduced, there's not a single cite to the record because the record doesn't show what it is about, you know, what innuendo could be inferred from this evidence that shows that he's a member of a security threat group. And so we think that given the fact that the defendants haven't introduced anything into the record, at minimum, there's a material dispute of fact about the reliability of this evidence. Unless this panel has additional questions about those three pieces of evidence, I'd also like to talk about the defendant's failure to offer Johnson a meaningful opportunity to be heard. The case law is very clear that the defendants cannot determine that they're going to validate Mr. Johnson before the hearing began. And the defendants don't dispute that they did that. In fact, if you look at pages 24 through 26 of the red brief, when the defendants respond to our meaningfulness argument, they make just two arguments. One is a waiver argument, which we think is meritless as we explained in our briefing. And the second is that Mr. Johnson received some, it was afforded some due process. Well, he was entitled to present evidence and at least to orally address the panel, right? He certainly, Your Honor, and he did. And much of your complaint was that they had already come up with at least a preliminary ruling beforehand. We believe that what Mr. Johnson has alleged is that they came out with a pre-written decision and that they pre-judged the evidence. And at this stage, again, reviewing the light in the, reviewing the evidence in light was favorable to Mr. Johnson. If the defendants did indeed pre-judge the record before Mr. Johnson had his opportunity to be heard, then that violates his due process rights. And again, the defendants. Doesn't that happen in courts all the time, whether it's a district court? I mean, courts that take evidence where they look at what the parties have presented. They come to a preliminary decision. Sometimes district judges issue inclinations. And they say, but we're going to listen to you. We're going to let you know if you can change our mind. But, you know, they have a preliminary view which is subject to change. A tentative. Yeah. It's often called a tentative. Why isn't this just a tentative? Well, Your Honor, two brief responses. The first is that typically when courts issue a tentative ruling, that's after they've received the briefing from both parties. And that's quite important here. The defendants hadn't even heard from Mr. Johnson when they wrote their pre-written decision. And the second we'd say is that even, that there's no evidence in the record that this was just a tentative decision. And they actually meaningfully listened to the arguments that Johnson made. And again, I think the defendant's red brief is really important and speaks for itself. The defendants do not dispute that they prejudged the record. They simply say Johnson waived this argument and that he received other due process rights. There's actually not a material dispute of fact here that the defendants prejudged the record. And given that the fact, given the fact that the defendants can't say to any record evidence showing that they did consider Johnson's arguments, and the fact that the defendants don't even argue that they did so in their briefing, we think that shows that Johnson's due process rights were violated. Do you want to reserve? Oh, sorry, I'll reserve the remaining three. Very well. Thank you, counsel. Good morning, Your Honors. And may it please the court, my name is Danny O'Connor. I represent the defendant appellees in this matter, Thomas Higginson, Shannon Tillman, and Chris O'Connor, no relation. At counsel table is my associate, Jen Tetreault. The simplest resolution in this case, despite several various subtly nuanced issues that the panel might decide in this case, would be to just do what the district court chose to do, and that's to apply the evidence on the record to the applicable law. And the appellant in this case urges this court to adopt a heightened standard beyond what the law actually demands. They repeatedly state that the relevant standard is whether Johnson accrued 10 or more points from two or more sources, and this adopts the department's order 806, but that's not the law. It's well established that a violation of policy does not equate to a violation of the Constitution. In this case, the standard is minimally stringent, and that is some evidence with an indicia of reliability, and despite counsel's arguments just now, there is a clear abundance of evidence in this case. And if you look at the validation packet, so I'm getting feedback here, is that? I think you're okay now. Try it again. Everything's fine. There we go. Check, check. I will look no further than the micro note authored by Mr. Johnson, and that's at ER 273. You can see just from that piece of evidence alone, there are numerous inferences of reliability. It discusses repayment of debt. It names known and validated Warrior Society members and suspected members. Mr. Johnson does not dispute that he authored this note. The fact that it's a micro note alone, and in the record, you'll see it's enlarged so that you can read it more clearly, but this type of micro note is considered contraband in itself, so that's another inference that supports that he is an active member of this gang, or at least associated with it. Furthermore, it was discovered in another STG inmate's possession, and probably most significantly, this note is interpreted by SSU, and so I doubt that anyone in this courtroom is really an expert on prison gangs, but SSU are the experts here. They study the prison gangs. They gather intelligence, and it's reasonable for the appellees in this case sitting on the committee to rely on their interpretation. I mean, even without that, even just looking at the micro note, it seems to clearly be about collecting money from a debt inside the prison. Correct, Your Honor. A layperson could make that interpretation. SSU supports that interpretation. Mr. Johnson disputes that interpretation, but the fact is, if you're applying the standard properly, is that a competing inference doesn't defeat the sum evidence standard here, and his explanation is that it's innocent, is really insufficient, and nonsensical. He doesn't- What's your response to your friend's argument that this whole hearing was a complete sham, that they purported to give him due process, but they prejudged the evidence, they wrote it out, they pretended to listen, and then they just read what they'd already written, and that that's enough evidence of a due process violation to preclude summary judgment? Your Honor, I would say that there's just no evidence to support that inference. If the outcome of this hearing was truly predetermined beforehand in some way, I think that that, you know, might be fairly characterized as lacking a meaningful opportunity to be heard. But this is just a conclusory allegation based on Mr. Johnson's speculation. He's speculating- I mean, essentially what he has alleged is that he saw Mr. Higginson looking at a piece of paper while he was reading the results of the hearing. But he's speculating that he was actually reading. He's speculating, further than that, that if he was reading something, that this was something that was pre-written prior to the hearing, prior to the evidence, and not while he was out of the room, while the committee was deliberating. It could have been written then. And it also- he's speculating that even if it was, you know, in the most extreme version, it was a pre-written determined result prior to the hearing. He's speculating that that was predetermined. And as the panel correctly noted, it could have been drafted ahead of time as a preliminary opinion, much like courts draft preliminary opinions before all arguments. It's subject to revision, subject to change. He could be persuasive. And in fact, he was persuasive in at least one category of the evidence in this case. The association category was dismissed. His points were reduced from 16 to 14. So, you know, the suggestion that the outcome was predetermined is not supported by any evidence on the record. It's just completely speculation and conclusory allegations, which is insufficient to defeat summary judgment. So would you make the same- I mean, I know it's not the case here, but would you make the same argument if the outcome of the hearing hadn't had anything that was in his favor? If the pre-written statement and the outcome of the hearing sort of were the same, would you still say it was just speculative that the presentation was meaningless? Yes, Your Honor. I would say, absent any other supporting evidence to the contrary, there's nothing to suggest that, you know, this hearing was predetermined. He was- Mr. Johnson was permitted to give a 52-page PowerPoint presentation over 30 minutes long to make his case. He persuaded them on one category. But there is nothing on this record to suggest that it was predetermined. Okay. Thank you. Going back to the rest of the undisputed evidence, I would say this micro note alone, I think what the purpose of appellants trying to urge this panel to adopt a higher standard is create a greater scope and opportunity to create an issue of fact. Because that's not the standard, you really have to look no further than the micro note. The rest of the evidence, though, nonetheless, is equally reliable. As you can see in the- throughout the validation packet, it's supported by information reports by SSU, again, the experts on this matter. And there's no- I'd like to point out exactly who the appellees are in this case. I mean, they are validation committee members. They're not SSU members. There is no claim for a fabrication of evidence in this case. These are just- and there are no SSU defendants. These are just the appellees taking in the evidence that they received at the hearing and making a judgment call. It's inherently subjective, but it's not the court's place to second-judge that judgment. The correct standard is simply whether there is any evidence in the record that could support the conclusion reached by appellees. If there is, then due process has been met. Unless the court has any further questions about any of the other issues, such as the liberty interest potentially being at stake or qualified immunity, I think I've made my point and I wouldn't wish to take up the court's- any further of the court's time. All right. All right. Thank you very much, counsel. Appreciate it. May I proceed? You may. Thank you. I'd like to pick up on the predetermination of the- the predetermination that they would validate Mr. Johnson. The appellees say that Mr. Johnson's claims are conclusory, they're speculative. Mr. Johnson explained in his statement of facts in opposition to the defendant's summary judgment motion that the record- that the defendants decided that they would validate Johnson before the hearing began. What's lacking in the record is anything from the defendants showing that they did, in fact, consider Johnson's arguments at the hearing. There's no affidavits, there's no deposition testimony, there's nothing in the record that shows that the defendants actually considered the arguments that Johnson made. We're here on a motion for summary judgment. There is a material dispute of fact about whether or not the defendants did or did not consider the arguments that he made. And the defendants cannot point to anything in the record that shows that the defendants did, in fact, consider his arguments. And we think that given that the defendants' own briefing, again, this is 24 through 26, the defendants' own briefing disclaims any argument that the defendants considered the arguments made by Mr. Johnson. We think that he easily meets the lower burden- the lower burden here that a reasonable jury could find, viewing the evidence in the light most favorable to him, that the defendants did prejudge the record. I'd also like to address the standard of proof here argument that the appellees raised, and I didn't have a chance to discuss in my opening portion. So we explained in both of our briefs, first, that we do believe that the relevant question here is whether or not there's some evidence that the defendants introduced two pieces of evidence worth at least 10 points under DO-806. And the reason for that is, as the Supreme Court has repeatedly held in cases like Kentucky Department of Corrections v. Thompson, a state can create liberty interests through procedures, regulations that limit the discretion of state decision-makers. And that's exactly what DO-806 does. The defendants' primary response is that this court's decisions in cases like Bruce and Castro foreclosed that argument, but those cases didn't answer the antecedent question of whether or not there was a state-created liberty interest. That's the distinguishing factor here. Here, there is a state-created liberty interest. And even if you disagree with us here, we still went under the Castro standard because all three pieces of evidence are unreliable. You know, I think my sense from the court's questioning and from Apley's arguments is that the piece of evidence with the most hair on it is the micro-note, and I think we acknowledge that. But here, we don't believe that the defendants have introduced any evidence into the record that shows why a note that's talking about paying your debts is a reliable indicator that Johnson is a member of the Warrior Gang. And again, the defendants in 21 through 24 of their briefing don't cite anything in the record, and we don't think that the 2014 validation packet, which again was created in retaliation for Johnson's filing of prison grievances, is a reliable indicator of this evidence. So given the fact that the defendants have not explained the innuendo they want this court to reach, we believe they haven't met their standard. And with that, I'd ask that you reverse the district court's decision and remand for further proceedings. Thank you. All right. Thank you, counsel. Thanks to both of you for your briefing and argument in this case. And again, thank you very much for stepping up, arguing pro bono. This case is submitted.
judges: OWENS, BENNETT, THOMAS